Richard F. Armknecht, III (A5910)
Attorney for Plaintiffs
7862 S. Danish Downes Court
Salt Lake City, Utah 84121
Telephone: (801) 942-3804
Fax No.: (413) 825-8570

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DISABLED RIGHTS ACTION COMMITTEE, a Utah nonprofit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE BOYER COMPANY, L.C., a Utah limited liability company, DOES I-L; and ROE CORPORATIONS I-L,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. __________<br><br>Judge ________<br><br>2:01CV-996B |

COMES NOW, Plaintiff, DISABLED RIGHTS ACTION COMMITTEE, a Utah nonprofit corporation (DRAC) by and through their attorney, RICHARD F. ARMKNECHT, III, and for their claims for relief against Defendants THE BOYER COMPANY, L.C., a Utah limited liability company; DOES I-L; and ROE CORPORATIONS I-L, allege as follows:

1. This is an action for injunctive relief (including both injunction and appropriate ancillary relief) to remedy Defendants' unlawful discrimination against the Plaintiff's members in a place of public accommodation. Plaintiff complains of Defendants' discrimination which constitutes several violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §12181 et. seq., (the "ADA").

2. Public accommodations and commercial facilities built for first occupancy after

January 26, 1993, are required to be "readily accessible to and useable by individuals with disabilities." 42 U.S.C. §12183(a)(1). The Department of Justice, in accordance with 42 U.S.C. §12186(b), has provided, in its implementing regulations for Title III of the ADA, the "Standards for Accessible Design." *See*, 28 C.F.R. Part 36. Those standards are set forth in Appendix A of 28 C.F.R. Part 36, and are known as the "ADA Accessibility Guidelines"' which are referred to herein as "ADAAG".

Despite the clear mandate of the ADA and the clear standards of the ADAAG, Defendant BOYER and various other Defendants have built architectural barriers into The Gateway and the facilities located therein. Some of those architectural barriers are identified herein. Others will be identified during discovery.

3. In addition to architectural barriers, Title III of the ADA also prohibits "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ." 42 U.S.C. §12182(b)(2)(A)(ii). Defendant BOYER has a practice of constructing (or permitting the construction of) architectural barriers at The Gateway. Other Defendants have practices that deny the disabled the benefit of the use of otherwise accessible elements of facilities.

## JURISDICTION AND VENUE

4. Plaintiff DISABLED RIGHTS ACTION COMMITTEE files this action as a representative of its members and on its own behalf with respect to the frustration of mission and diversion of resources occasioned by Defendants' violations of Title III of the ADA. The Court has jurisdiction of this action under 28 U.S.C. § 1331, and 42 U.S.C. § 12188(a)(1).

5. Venue of this action is appropriate in the United States District Court for the District of Utah, pursuant to 28 U.S.C. § 1391(b) and (c) as the claim arose in such district and, further, as Defendants conduct business in such district.

**THE PARTIES**

6. Plaintiff DISABLED RIGHTS ACTION COMMITTEE (DRAC) is a Utah non profit corporation organized with the principal purpose of helping to eliminate discrimination against individuals with disabilities by ensuring compliance with laws intended to provide access to housing, public buildings, transportation, goods and services. The ADA constitutes such a law. DRAC is qualified as a charitable organization under 26 U.S.C. § 501(c)(3). Members of DRAC are primarily individuals with disabilities and persons related to individuals with disabilities. DRAC has over one thousand members nationwide, most of whom are residents of Utah. Many DRAC members require wheelchairs for mobility, and who have been or will be subjected to discriminatory access and limitations to service when compared with the non-disabled patrons of The Gateway. Some DRAC members plan to continue to patronize The Gateway (despite the existence of discriminatory conditions) while other DRAC members are discouraged from patronizing until access is improved.

7. DRAC has standing as the representative of its members and in its own right. DRAC's organizational purpose is adversely affected by Defendants' refusal to comply with the ADA and to ensure that new construction is ADAAG-compliant. DRAC itself suffers direct and identifiable injury as a result of Defendants' actions, as DRAC and its members and potential members are injured when commercial businesses refuse to comply with the ADA but, instead, continue to discriminate against persons with disabilities. As a result of their disabilities, certain

features of accessability are necessary to allow DRAC's members access to public buildings, transportation, goods and services, including commercial restaurants, which access is required under the ADA. Accordingly, DRAC's disabled members cannot fully and evenly participate in the amenities of living in Utah unless Defendants comply with the requirements of Title III of the ADA.

8. Defendants are THE BOYER COMPANY, L.C., a Utah limited liability company; DOES I-L; and ROE CORPORATIONS I-L which Defendants are either owners, operators, lessors, or lessees of some or all of The Gateway. Each Defendant is subject to the requirements of the ADA because it operates and provides public accommodations, as defined in Title III of the ADA. The statute defines "public accommodations" to be entities (1) whose operations affect commerce, and (2) that fall into one or more of twelve categories of public accommodations set out in the ADA. *See* 42 U.S.C. § 12181(7). The Gateway (and most, if not all of the establishments located within The Gateway) is a "public accommodation," under the ADA's categories of public accommodation. For exable, and without limitation, it is a "restaurant, bar, or other establishment serving food or drink," within the meaning of section 301(7)(B); a "motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment," within the meaning of section 301(7)(D); and it is also "a . . . shopping center, or other sales or rental establishment," within the meaning of section 301(7)(E). *See* 42 U.S.C. §§ 12181(7)(B), (D), (E).

**FACTS**

9. "The Gateway" is a 40 acre commercial development located in Salt lake City, Utah. It opened for business on November 1, 2001. At it's website (boyercompany.com), Defendant BOYER describes The Gateway as "700,000 square feet of entertainment retail which will include theaters, restaurants, and retail facilities unique to the Salt Lake area. 300-room hotel,

200 residential units and various cultural facilities."

10. Since November 1, 2001, various members of DRAC (which members are wheelchair users) have visited The Gateway. During such visits, DRAC's members have encountered architectural barriers, both in the "common areas" of The Gateway and in various stores, shops and restaurants that are tenants of The Gateway.

11. The architectural barriers located in the "common area" of The Gateway include, but are not limited to:

a. A street used as a pedestrian walkway that permits those able to walk to cross at any point, but wheelchair users must (because of the gutters which line the walkway) cross at widely-spaced crossing points. Even those crossing points have cobblestone surfaces that hinder wheelchair users.

b. The entrances to the parking lots from 4th West have no signage indicating the availability of disabled parking spaces. An inspection of the parking lots discovered inadequate signage at the disabled parking spots: no "van accessible" signs, and signs that can be obscured by a vehicle parked in the space (see ADAAG 4.6.4). Also, some spaces had no accessible route (ADAAG 4.1.2(1) and 4.3).

c. The restrooms had very heavy doors (both in the restroom and from the outside door). *See* ADAAG 4.13.11 (2)(b).

d. A pay phone without a TDD had no sign directing to a phone with a TDD. ADAAG 4.31.9.

12. The architectural barriers located in various stores, shops and restaurants that

are tenants of The Gateway include, but are not limited to:

a. At "Brookstone," the store had 30-inch aisles between display racks and no lower counter space (*see* ADAAG 7.2).

b. At "Arden," the counter was uniformly 41 inches high (*see* ADAAG 7.2).

c. At "Sole Outdoors," the store had 24-inch and 30-inch aisles between racks.

d. At "Gaylans," most aisles between racks were 28 inches. The first floor (women's) bathroom commode was only 13 inches from the centerline of the commode to the toilet paper container (*see* ADAAG 4.16.6).

e. At "Timbucktoo," the counter was too high (see ADAAG 7.2).

f. At "Banana Republic," the sales counter was equipped with a pull-out drawer for persons with disabilities. Not only was the drawer not provided with signage, but such "alternatives" to a 36-inch wide, and no more than 36-inch high portion of counter space are not satisfactory for retail sales counters having cash registers (*see* ADAAG 7.2(1)).

g. At "Sur La Table," baskets by the front door made the net clear space only 29 inches. Also, baskets limited aisles between racks to 23 inches.

h. At "Barnes and Noble," the centerline of the commode was only 13 inches from the toilet paper container. (*see* ADAAG 4.16.6) A very heavy door on the upper level from the outside. A sales counter that was 46 inches high with no lower area. *See* ADAAG 7.2(1).

i. At "Buckle," the aisles were only 18 inches wide. DRAC's members could not even get to the cash register to see if there was a low counter.

j. At "Humphrey Yogart," there was no lower sales counter, *see* ADAAG 7.2(1), and the only available fixed seating was very high, *see* ADAAG 5.2.

k. At "Bunya Bunya,"there was no lower sales counter, *see* ADAAG 7.2(1).

l. At "Abercrombie & Fitch," there were many racks blocking access. There was no lower portion on some sales counters, *see* ADAAG 7.2(1). Pull-out shelves (at a lower height) were provided at some counters, but they were not labeled, and one such shelf was pulled out and loaded with perfume.

m. At "Z," the symbol of accessibility was on the outside door, but there was no lower sales counter, *see* ADAAG 7.2(1), and some aisles were only 26 inches wide.

n. At "Victoria's Secret," there was no lower sales counter, *see* ADAAG 7.2(1).

13. Encountering these inaccessible conditions has caused DRAC's members substantial affront and indignity, which injury is ongoing until the inaccessible conditions are corrected and the underlying practice of BOYER (to allow its tenants to build inaccessible facilities) is corrected by injunction. Some of DRAC's members will continue to visit The Gateway despite the inaccessible conditions.

**FIRST CAUSE OF ACTION**
(Injunction for Violation of Title III, ADA)

14. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 13 hereof, and incorporate the same herein by reference.

15. Defendants have engaged in discrimination: (1) by failing to design and construct facilities in accordance with ADAAG; and (2) by failing to modify their policies, practices

and procedures to ensure that their tenants or employees do not violate the ADA.

16. Plaintiff's members, because of their disabilities, cannot fully and equally access the facilities at The Gateway. DRAC's members are subjected to such discrimination on an ongoing basis (even without actually patronizing The Gateway), as their shopping and dining choices and opportunities are unfairly limited when facilities are not readily acccessible.

17. DRAC's members who are subjected to the discriminatory conditions present at The Gateway suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests.

18. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of Plaintiff's members' much-cherished independence. The injuries sustained by DRAC's members relating to the discrimination at the Defendants' facilities are ongoing until the discriminatory conditions are corrected by either granting the access required by law or removing or shutting down the source of the affront and indignity.

19. Plaintiff has been forced to engage the services of an attorney. Therefore, Plaintiff is entitled to an award of attorney's fees and costs.

**SECOND CAUSE OF ACTION**
(Accounting for Unjust Enrichment)

20. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19 hereof, and incorporates the same herein by reference.

21. On information and belief, Defendants' failure to exercise proper oversight of the conditions at The Gateway has conferred an economic benefit to Defendants, and Defendants' continued delay in altering the facilities or in refunding the membership fees gives Defendants the

associated time value of money.

22. The ADA has been the "law of the land" since 1990, and knowledge of the law (and the benefits it confers upon disabled persons) may be imputed to Defendants. Furthermore, as of the date of the service of this Complaint, Defendants will have had actual notice of their obligations under the ADA and the injuries associated with violations.

23. As Defendants have infringed upon the rights of others (wheelchair users residing in Utah) to gain an economic benefit (the economic advantage of "cutting corners" in compliance with the ADA and the time value of money), Defendants have been unjustly enriched, and the full application of the principles of equity requires Defendants to disgorge to Plaintiffs the full amount of economic gain reaped by Defendants through Defendants' illegal conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants;

On the First Cause of Action:

(a) For a permanent injunction enjoining Defendants, their agents, employees and assigns from discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and specifically requiring Defendants to (1) provide access in accordance with ADAAG, and (2) modify their policies, practices and procedures to provide oversight of their tenants' and employees' compliance with the ADA;

(b) For Plaintiff's attorney's fee, including litigation expenses, and costs of suit; and

(c) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

On the Second Cause of Action:

(a) For an award of an accounting for profits in an amount deemed appropriate by the Court;

(b) For Plaintiff's attorney's fee, including litigation expenses, and costs of suit; and

(c) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

DATED this 14th day of DECEMBER, 2001.

Richard F. Armknecht

Richard F. Armknecht, III, Esq., (A5910)
7862 Danish Downes Court
Salt Lake City, Utah 84121
(801) 942-3804